# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0521-MR

JUSTIN DENIHAN                                                        APPELLANT

|                    | ON APPEAL FROM WARREN CIRCUIT COURT |
| V.                 | HONORABLE JOHN GRISE, JUDGE |
|                    | NO. 17-CR-01075 |

COMMONWEALTH OF KENTUCKY                                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Justin Denihan appeals as a matter of right[1] from the Warren Circuit Court judgment sentencing him to life imprisonment following his guilty plea to murder, abuse of a corpse, and tampering with physical evidence. On appeal, Denihan argues that the tote in which he stuffed the victim's body was improperly displayed to the jury during the sentencing phase of trial, in violation of KRE[2] 403, and unduly swayed the jury to recommend the maximum sentence on all charges. We affirm the trial court's judgment.

---

[1] Ky. Const. § 110(2)(b).

[2] Kentucky Rules of Evidence.

## I. Facts and Procedural Background

The facts of this case are largely undisputed and not at issue on appeal. Denihan has a history of substance abuse and often used drugs with the victim, Kelly Hackett, a woman with whom he lived and had an ongoing sexual relationship. The day before Denihan murdered her, he tried to kill himself. Following his unsuccessful suicide, Denihan was at Hackett's home watching a movie with her; they started having sex, then he strangled her, cut into her chest area with a knife to carve an "L" shape, bound her feet with an extension cord, shoved her body inside a plastic storage tote and taped the lid shut with duct tape. He left the tote in a room in Hackett's home. Denihan claims he does not remember the details of the entire encounter, since he was high on drugs, but does not dispute that he killed Hackett and stored her body in the tote.

Deputy Sam Scarborough who was dispatched to the scene found the tote duct-taped shut and shoved under a desk. Inside, Hackett's body laid on her back, nude from the waist down, with her knees pushed up to her chest. Her head was covered with a trash bag, her ankles bound with an extension cord, and two knives were lying near her knees.

The forensic pathologist who performed Hackett's autopsy, Dr. Donna Stewart, testified that Hackett suffered multiple injuries secondary to an assault including assault-like strangulation injuries and sharp-force injuries. Dr. Stewart testified that Hackett could have died from strangulation or the knife wound in her chest.

Denihan pled guilty to all charges, acknowledging during the sentencing trial that he had no doubt in his mind that he killed Hackett and that he was pleading guilty of his own volition. Ultimately, the jury recommended life imprisonment for murder, 12 months' imprisonment for abuse of a corpse, and 5 years' imprisonment for tampering with physical evidence. The trial court imposed the recommended sentence but ordered it to run concurrently for a total life sentence. This appeal followed.

## II. Standard of Review

This Court reviews evidentiary decisions of the trial court, such as whether to admit or exclude evidence, for an abuse of discretion. *Rucker v. Commonwealth*, 521 S.W.3d 562, 569 (Ky. 2017); *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). An abuse of discretion occurs if the trial court's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). However, unpreserved evidentiary challenges, such as here, are subject to palpable error review under RCr[3] 10.26.

> Under RCr 10.26, an unpreserved error may generally be noticed on appeal if the error is palpable and if it affects the substantial rights of a party. Even then, relief is appropriate only upon a determination that manifest injustice resulted from the error. For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotations omitted).

---

[3] Kentucky Rules of Criminal Procedure.

## III.    Analysis

Denihan argues that allowing the Commonwealth to visually present the tote while cross-examining him violated KRE 403 and unduly prejudiced him. Denihan never objected to the introduction of the tote into evidence. However, prior to the defense's presentation of its case, Denihan's counsel requested that the tote be moved out of the jury's sight while she questioned defense witnesses, claiming that the visibility of the tote was upsetting to Denihan and his father. The Commonwealth did not object. The trial court indicated that it would defer to the Commonwealth as to the placement of the tote during its case-in-chief but that it could be moved, or even removed from the courtroom entirely, when the defense presented its witnesses. Defense counsel stated that removal of the tote from the courtroom was unnecessary; counsel simply wanted to move it to where it would not be seen by the witnesses or jury. At no point did defense counsel mention KRE 403 or raise any other rule of evidence.

During direct examination of Denihan, defense counsel mentioned the tote and Denihan testified how seeing it upset him and made what he did to Hackett seem so real. On cross-examination, the Commonwealth questioned Denihan about the tote and its relation to the murder and brought it out into view. The Commonwealth questioned Denihan about what he remembered, specifically whether he recalled binding Hackett's legs with an extension cord "so she wouldn't flop out of the tote." Defense counsel objected, without stating a basis. The trial court overruled the objection. Later, defense counsel complained about the Commonwealth's entire line of questioning surrounding

4

Denihan's memory of the murder, insisting that Denihan had already answered those questions. The trial court again overruled the objection. At no point during the Commonwealth's cross-examination of Denihan did defense counsel object to the placement of the tote.

Denihan now argues that the Commonwealth presenting the tote while cross-examining him violated KRE 403. But Kentucky law is clear that objecting on one basis does not preserve every possible objection arising from an item of evidence. *See Fairrow v. Commonwealth*, 175 S.W.3d 601, 607 (Ky. 2005) ("When a party states grounds for an objection at trial, that party cannot assert a different basis for the objection on appeal[]" (citations omitted)). Since Denihan did not raise a KRE 403 objection at any relevant point during trial, or object to the admission of the tote into evidence, or its location during cross-examination, his claim is unpreserved, and we will review it only for palpable error.

All relevant evidence is admissible pursuant to KRE 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. The prohibition on the cumulative presentation of evidence is designed "to give courts needed

5

discretion to control tireless litigators and to conduct trials efficiently." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 715 (Ky. 2009) (quotations and citation omitted). "The task of weighing the probative value and undue prejudice of proffered evidence is inherently factual and, therefore, within the discretion of the trial court." *Ross v. Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015) (citation omitted).

Denihan asserts that the tote essentially functioned as Hackett's coffin and even if relevant, was gruesome, cumulative, and inflammatory evidence that unduly prejudiced the jury. He points out that several photos introduced into evidence at trial contained the tote, including pictures of the tote unopened in Hackett's home, opened with Hackett's body visible, and with the knives tucked in the tote next to her knees. A video of the crime scene was also shown to the jury, which ended at the tote, showing Hackett's body inside. Denihan maintains that considering this evidence, and the testimony elicited from the Commonwealth's witnesses, the tote was not necessary for a full understanding of the case.

Denihan further alleges that the tote was inflammatory, as its tangible form allowed for immediate sensory observation in a way that a photo does not and served no other purpose than to incite an emotional response from the jury. He avers the harmful and prejudicial consequences of the tote substantially outweighed the probative value; because no one disputed Denihan's guilt, and alternative evidence in the form of photos and video was presented, the physical evidence of the tote in the courtroom was of low

6

probative value and high prejudice, causing the jury to recommend the maximum sentence on all counts. *See Hall v. Commonwealth*, 468 S.W.3d 814, 824 (Ky. 2015) (stating that with "already overwhelming evidence tending to prove a particular fact, any additional evidence introduced to prove the same fact necessarily has lower probative worth, regardless of how much persuasive force it might otherwise have by itself").

In response, the Commonwealth argues that the tote was properly admitted, as its probative value was high and any prejudice to Denihan slight. Regardless, the Commonwealth asserts that the tote's admission certainly did not rise to the level of palpable error, as the tote aided the jury's understanding of the events surrounding Denihan's charges and was akin to allowing the introduction of, for example, a murder weapon. *See Major v. Commonwealth*, 177 S.W.3d 700, 714 (Ky. 2005) (Cooper, J., concurring in part and dissenting in part) (opining that background evidence such as charts, photographs, views of real estate, murder weapons, is universally offered and admitted as an aid to understanding). Although the tote undoubtedly made an impact on both Denihan and the jury, that does not render the tote inadmissible. *See Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (prosecution "is permitted to prove its case by competent evidence of its own choosing, and . . . the defendant may not stipulate away parts of the case that he does not want the jury to see[]" (citations omitted)).

Moreover, the Commonwealth maintains that introducing the tote itself was important to demonstrate how Denihan tampered with the physical

7

evidence in this case and abused Hackett's corpse. *See id.* (evidence is admissible when part of the res gestae of the crime). Further, "[n]ot all evidence that is duplicative is therefore cumulative, and evidence should not be excluded on this ground merely because it overlaps with other evidence." *Daugherty v. Commonwealth*, 467 S.W.3d 222, 235 (Ky. 2015) (citation omitted). "And some repetition [of the evidence] is no doubt helpful for a jury." *Id.*

While the tote may have been prejudicial to Denihan, serving as visual proof of his guilt, because this claim of error is unpreserved, the question remains whether its introduction substantially affected Denihan's rights and resulted in manifest injustice so as to constitute palpable error. We conclude it did not. Considering that Denihan pled guilty to all charges (and did not dispute strangling Hackett, tying her up, stuffing her in the tote, and duct-taping it shut), and the jury was presented with photographs and video evidence of Hackett's nude, mutilated body in the tote, we find that introduction of the tote itself unlikely led the jury to recommend any harsher sentence than it otherwise would have. Accordingly, no palpable error resulted.

## IV. Conclusion

For the foregoing reasons, we affirm the Warren Circuit Court's judgment sentencing Denihan to life in prison.

All sitting. All concur.

8

COUNSEL FOR APPELLANT:

Kayla Danielle Deatherage
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General